Ashburn, .J.
This action was brought by plaintiff to> recover a royalty reserved under a contract of assignment by plaintiff to defendant, Weare, of certain oil-land leases- *348 in Washington county, Ohio. The other defendants have .and hold interests in the leaseholds from Weare.
Plaintiff charges, substantially, that on the 30th day of June, 1866, it was, and now is, a corporation duly organized under the laws of the State of New York; that Derrickson Reynolds, the owner in fee of the land, demised it to certain parties named, who afterward assigned the leaseholds to the plaintiff; that the leasehold lauds are in Washington county, Ohio ; that plaintiff became the owner of the leases for the purpose of excavating for coal, carbon oil, etc.; that plaintiff, at that date, being seized of an unexpired term in said lands, entered into a contract with' defendant, Weare, and assigned to him said leaseholds, reserving to plaintiff one-sixth of the oil and other minerals produced therefrom, and, in consideration for said assignment of said leases to him, defendant, Weare, agreed and promised to pay plaintiff one-sixth of the oil produced thereon; that plaintiff put defendant, Weare, into possession of .the lands under said contract; that Weare and •others holding under him have ever since remained in possession and enjoyment of the said leaseholds; that four thousand and sixteen barrels of oil have heen produced thereon since Weare took possession; that six hundi’ed and sixty-nine barrels would be plaintiff’s royalty under the •contract; that it has received but one hundred and twenty-three barrels, leaving due plaintiff' five hundred and forty-six barrels of oil; that defendants refuse to pay them to plaintiff. Plaintiff prays for an account and general relief.
In our view of the case, it is unnecessary to consider the pleadings further than to state that the answer, by not denying, admits the facts stated in the petition, and charges .as a defense that plaintiff is an organization formed to avoid the laws of Ohio governing corporations in Ohio for .similar purposes. On the trial plaintiff' offered, without •objection, the statutes of the State of New York, under which it claims its organization; also a certificate of its organization there, duly authenticated. No other testimony was offered by either party. The District Court dismissed *349 the action. Plaintiff demanded a new trial. Denied. A hill of exceptions, embodying all the testimony, was taken, and made part of the record. To the judgment and ruling of the court plaintiff’ assigns in this court as causes of error the following:
“1. That the said court erred in finding that the plaintiff’ was not entitled as a corporation under the comity of nations to bring an action or sue in the courts of Ohio.
“ 2. That the said court erred in overruling and denying-the plaintiff's motion for a new trial.
“ 3. That the said judgment was given for the said defendants, when it ought to have been given for the said plaintiff, according to the law of the land.*
By the statutes of New York, such corporations as-plaintiff are authorized to complete their organization and transact business in a sister state in the manner provided in section 1 of “ an act to authorize the formation of corporations for manufacturing, mining, mechanical, or chemical purposes,” and the amendments thereto. Section 2 declares them “ bodies politic and corporate in fact and in name by the name stated in such certificate,” . . . and “ by their corporate name shall be capable, in law, of purchasing, holding, and conveying any real and personal estate whatever which may be necessary to enable the said company to carry on their operations named in such certificate.” The original act was amended in 1857, and section 3 of the amendment provides : “ If any company shall be formed under said act for the purpose of carrying on any part of its business, in any place out of this state, the said certificate shall so state, and shall also state the name of the town and county in which the principal part of the business of said company within this state is to be transacted, and said town and county shall be deemed the town, place, and county in which the operations and business of the company are to be carried on, and its principal place of business, within the meaning of the provisions of this act.”
In compliance with the statutes of New York, A. M. Sherman, Charles S. Miles, and E. Warner, on September *350 21,1864, made, acknowledged, and filed, as required by section 1 of the original and section 3 of the amended act, a certificate, stating, amongst other things, “ that the corporate •name of the said company is to be the £ Newburg Petroleum Company;’ that the objects for which the said company is to be formed are mining, digging, and boring for petroleum and mineral oils, and pumping, extracting, and vending the same; also mining and vending coal and other minerals, and for doing such other things as are or may be connected with or necessary to the prosecution of the busi■ness of the said company; that the amount of the capital •stock of said company is to be $50,000; that the term of the existence of the said company is to be twenty years from the day of the date thereof; that the number of shares ■of which the said stock is to consist is to be five thousand shares, of the par value of ten dollars each; that the number of the trustees shall be five, and the names of those who shall manage the concerns of the said company for the first year are A. M. Sherman, O. S. Miles, E. Warner, Par■don C. Sherman, and Francis H. Towes; that the said company is formed.for the purpose of carrying on some part of its business out of the State of New York, namely, the county of Washington, in the State of Ohio ; and the principal part of the business of said company within this state is to be transacted in the city of New York, where its office is to be located.”
It is clear that plaintiff, at the time it entered into the • contract with Weare, was, under the statutes of New York, “ a body politic and corporate,” with power to do business in that state, and capable, so far as the laws of that state ■ could make it, to transact business in Washington county, Ohio, and of ££ purchasing, holding, and conveying any real and personal estate whatever which may be necessary to enable the said'corporation to carry on its operations named in the certificate.”
Two questions are presented by this record:
1. The legal right of a foreign corporation to make and -enforce a contract in Ohio.
*351 2. The effect of defendant, Weare’s, conduct in reference •to the contract upon his defense in the action.
The power that a foreign corporation may exercise in another state depends for its validity upon the condition of the laws of the sovereignty in which it is exercised; and such corporation can make a valid contract only when the sanction of such sovereignty is given expressly or impliedly. Ohio, in such .ease, has no law of prohibition, and the course of decision in her highest court has been such .as to give sanction to such contracts.
Corporations organized in New York are, for the purposes of litigation, citizens of that state, and, until prohibited by statute, have the rights of artificial citizens in this state, in respect to acquiring, holding, and disposing of property and interests in property in the proper transaction of their business. And incident to this power is the right t> sue and quality to be sued in our courts. This comity between the States of New York and Ohio made it lawful for plaintiff to enter into the contract in this ease, and to -use this forum to enforce its rights under the contract.
In the ease of the American Bible Society et al. v. A. G. Marshall et al., 15 Ohio St. 537, the power of a foreign corporation to take property by devise in Ohio, to possess and litigate concerning it in our courts, was recognized. That was a case in which, by the laws' of the State of New York, where the corporation was organized, corporations are prohibited from taking property by devise, unless authorized to do so by its charter or the statute. Brinkerhoff, J., in the opinion, says : “ There is nothing in the legislation of this state to limit the general capacity of the Bible society to take, by devise, real estate in Ohio.”
We find nothing in the laws or the public policy of Ohio prohibiting a foreign corporation from entering into contracts in relation to their business, or selling any property they may,in relation to their business, have acquired, and property relating to their corporate capacity. When Ohio interposes by legislation to prohibit the introduction of this kind of labor and capital into the state, it will be time *352 enough to declare the organization of such companies as the plaintiff a fraud upon our laws and our public policy.
It is claimed that the organization of this corporation in New York was not to transact business in that state, but a device to do business in Ohio and evade responsibility under the laws of this state.
This question has been settled in the case of Hanna & Finley v. The International Petroleum Co., 23 Ohio St. 622. The defendant in error was a foreign corporation, char-, tered by the laws of Pennsylvania, and authorized to cai’ry on its business in Pennsylvania and other states.
It commenced business in Ohio, having an office in Pennsylvania.- Whilst pi’osecuting its business in Ohio, in 1866, it became involved in a legal controversy concerning some property it claimed to own. in this state. A petition in error was filed in the District Court of Morgan county to reverse a judgment of the Court of Common Pleas, and was reserved to the Supreme Court. There, as here, one of the errors assigned was that “ the International Petroleum Company could not own property or be a party to a suit in Ohio.” Welch, J., says : “ That a foreign corporation under the present laws of Ohio can hold property in this state, and sue and be sued in her courts, is well settled, and is perhaps not intended to be denied.” In the case in course of decision it is not only denied, but it is claimed in argument that plaintiff is a fraud both on the New York law and our own legislation and policy, and this chiefly because it has only an office in New York city, and does its principal business in Ohio.
This objection to the power and legality of this corporation is so well met in the case referred to in 23 Ohio S.t., that we will quote the language of the opinion in part. The judge says : “ The argument seems to be that this company was not a corporation, either because it was empowered by its charter to do business outside the state of its creation, as well as inside the state, or else because at the *353 time these proceedings were had the company had done no business, beyond its mere organization in the State of Pennsylvania. We are unable to see why the incorporation should be invalidated on either or both of these grounds. The question is simply whether a corporation, authorized by its charter to do business both at home and abroad, and which, after doe organization at home, commences its foreign business first, has a legal existence as a corporation. We think that it has. The life of a corporation dates from its organization, and not from the time it begins to do business.”
The plaintiff, by virtue of its organization-in due manner, had au actual legal existence in New York so soon as it was duly organized, and a permissive existence in Ohio so soon as it commenced business in Ohio. Owning property and transacting ordinary business by foreign corporations in this state, under the permissive authority of their organization, are not assumptions of prerogative power or right. When the case arises of a foreign corporation assuming the prerogative to levy a tax upon any portion of our people, to build a bridge upon our soil, to collect toll, etc., questions will arise not involved here, and which we do not now consider.
What effect shall be given to the conduct of defendant, Weare, in relation to this contract as shown by the record?
Weare entered into the contract with the plaintiff charged with the knowledge that it was a foreign corporation ; that it was authorized by its organic laws to do business in Ohio ; that from the nature of its business it was necessary for it to hold land, to take the assignment of leases, mine for minerals, and bore for oil, etc.; he took the assignment of leaseholds that plaintiff had purchased from others; took possession of the lands under plaintiff; sold or assigned interests in the leases to other persons; and agreed, in consideration that plaintiff' would assign to him the leaseholds, to pay plaintiff'one-sixth of all the oil produced; *354 has secured from the leases six thousand and sixteen barrels of oil, paid plaintiff' one hundred and twenty-three barrels of the royalty, and retains, as is alleged, five hundred and forty-six barrels of the oil, which plaintiff' claims under the contract.
This he retains upon the theory that plaintiff is a fraud upon the laws of New York, a fraud upon the laws of Ohio, and a fraud upon the polity of nations. In this we hold he has mistaken the law.
In view of these facts, Weare is estopped from denying the legal existence of the plaintiff as a New York corporation ; from denying the power of the plaintiff to make a legal contract for the transfer of the leaseholds to him; from denying the right of the plaintiff to maintain an action to compel him to account. A person benefited by a contract, holding on to it and receiving the benefits arising out of it, can not, in this collateral manner, question its va lidity. As the contract was a legal one, there can be no fur ther question, in this proceeding, about the legal organiza tion of the corporation or its power to do business in Ohio As a general rule, a party will be concluded from denying his own acts or admissions which are designed to and do influence the conduct of another, and when such denial will operate to the actual injury of that other person.
The defense in this ease appears to have in it no equitable consideration, and the laws will not sanction an inequitable proceeding where the integrity of the law can be maintained by a different course. Good faith requires that a person, who has recognized the existence of a corporation by dealing with it openly, with full knowledge of its business character, is yet in the enjoyment of the fruits of the transaction with it under the contract, should be estopped from denying, in this collateral way, the power of the corporation to enter into the contract. When parties seem unwilling to comply with contracts, lawful in their character, courts consider it a duty to admonish them, that it is not fraudulent nor contrary to public policy for them to do so.
*355 Judgment of the District Court and Court of Common Pleas reversed, and cause remanded to the Court of Common Pleas for further proceedings,,
Scott, Chief Judge, Day, Wright, and Johnson, JJ., concurred.